WO

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

Sourav Sam Bhattacharya,

Plaintiff,

v.

HISCOX Insurance Company, et. al.,

Defendants.

No. CV-19-02780-PHX-ESW

**ORDER**

This action concerns insurance policy number UDC-1846291-CGL-16 (the "Policy") issued by Defendant HISCOX Insurance Company ("HISCOX") to Networks and Security Research LLC ("NSR"). (Doc. 55-1 at 3-50). Plaintiff is the only manager and member of NSR.[1] (Doc. 55-3 at 3). The Policy was in effect from October 31, 2016 to October 31, 2017. (Doc. 55-1 at 7).

In March 2019, Plaintiff filed an Amended Complaint in the Superior Court of Arizona in and for Maricopa County that raised nine counts against Defendant HISCOX. (Doc. 1-3 at 16-53). Defendant then removed the action to this Court. (Doc. 1). The Amended Complaint presents nine counts.

Pending before the Court are Plaintiff's Motion for Partial Summary Judgment

---

[1] NSR recorded a "Resolution" with the Maricopa County Recorder's Office that states: "All loss incurred to NSR LLC is assigned to Sourav Bhattacharya (as an individual)." (Doc. 55-3 at 3). For purposes of its Motion for Summary Judgment, Defendant does not challenge this purported assignment or Plaintiff's status as an insured under the Policy. (Doc. 54 at 2 n.2).

(Doc. 53) and Defendant HISCOX's Motion for Summary Judgment (Doc. 54). For the reasons explained below, the Court will enter summary judgment in favor of Defendant on all counts.[2]

## I. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate if the evidence, when reviewed in a light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law determines which facts are material in a case and "only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248). Thus, the nonmoving party must show that the genuine factual issues "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson*, 477 U.S. at 250).

Because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . [t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor" at the summary judgment stage. *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)); *Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999) ("Issues of credibility, including questions of intent, should be left to the jury.") (citations omitted).

---

[2] The parties have consented to proceeding before a Magistrate Judge pursuant to Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c). (Doc. 15).

When moving for summary judgment, the burden of proof initially rests with the movant to present the basis for his motion and to identify those portions of the record and affidavits that he believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant fails to carry his initial burden of production, the non-movant need not produce anything further. The motion for summary judgment would then fail. However, if the movant meets his initial burden of production, then the burden shifts to the non-moving party to show that a genuine issue of material fact exists and that the movant is not entitled to judgment as a matter of law. *Anderson,* 477 U.S. at 248, 250; *Triton Energy Corp. v. Square D. Co.,* 68 F.3d 1216, 1221 (9th Cir. 1995). The non-movant need not establish a material issue of fact conclusively in his favor. *First Nat'l Bank of Ariz. v. Cities Serv.Co.*, 391 U.S. 253, 288-89 (1968). However, he must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (internal citation and emphasis omitted); *see* Fed. R. Civ. P. 56(c)(1).

Finally, conclusory allegations unsupported by factual material are insufficient to defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Soremekun v. Thrifty Payless, Inc.*, 502 F.3d 978, 984 (9th Cir. 2007) ("[c]onclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment"). Nor can such allegations be the basis for a motion for summary judgment.

**B. Insurance Policy Interpretation**

Jurisdiction in this matter is based on diversity of citizenship. (Doc. 1). The Court thus applies the substantive law of Arizona to resolve the insurance coverage issues. *See Erie v. Tompkins*, 304 U.S. 64, 78 (1938) (federal courts sitting in diversity apply state substantive law and federal procedural law).

In Arizona, an insurance policy is interpreted "according to its plain and ordinary meaning, examining it from the viewpoint of an individual untrained in law or business."

*Desert Mountain Props. Ltd. P'ship v. Liberty Mut. Fire Ins. Co.*, 236 P.3d 421, 427 (Ariz. Ct. App. 2010). An insurance policy "must be read as a whole, so as to give a reasonable and harmonious effect to all of its provisions." *Charbonneau v. Blue Cross*, 634 P.2d 972, 975 (Ariz. Ct. App. 1981) (citation omitted). Ambiguity in an insurance policy will be construed against the insurer. *California Cas. Ins. Co. v. Am. Family Mut. Ins. Co.*, 94 P.3d 616, 618 (Ariz. Ct. App. 2004)

"Generally, the insured bears the burden to establish coverage under an insuring clause, and the insurer bears the burden to establish the applicability of any exclusion." *Keggi v. Northbrook Prop. and Cas. Ins. Co.*, 13 P.3d 785, 788 (Ariz. Ct. App. 2000). "In order to establish a prima facie case, he must prove the insurance policy, the happening of the insured event, and the giving of notice as provided in the policy." *Pac. Indem. Co. v. Kohlhase*, 455 P.2d 277, 279 (1969).

## II. DISCUSSION

### A. Count I: Breach of Contract

In Count I, Plaintiff states that on November 1, 2016, NSR made "payments to 3rd Party vendor, using wire transfer," and that in December 2016 and March 2017, the "3rd Party vendor claimed (in writing) that customer shipments were made," but in March-April 2017, "[c]ustomers denied and claimed non-receipt." (Doc. 1-3 at 27). Plaintiff alleges "[l]ikely fraud committed by vendor, or in the alternative by the customers[.]" (*Id.*). Plaintiff further states that the "[c]ash value evidence for the loss is supported by . . . Bank Wire Transfer to the vendor, in the amount approximately United States $6844.00." (*Id.*).

Defendant denied the above claim on February 21, 2017. (Doc. 55-4 at 60-62). Plaintiff contends that the claim is covered under a section of the Policy that is titled "Coverage A- Bodily Injury and Property Damage Liability." (Doc. 1-3 at 27-28). That provision states: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking

those damages."[3] (Doc. 55-1 at 10). The language in the Policy is to be interpreted according to its plain and ordinary meaning, as one untrained in law or business would understand it. *Desert Mountain Props. Ltd. P'ship*, 236 P.3d at 427. The Arizona Court of Appeals has interpreted a "legal obligation to pay" to mean "any obligation enforceable by law, including, for example, an obligation created by statute, contract or the common law." *Id.* at 428.

In its Motion for Summary Judgment, Defendant asserts that Plaintiff cannot prove that the claim in Count I involves any sums that Plaintiff was legally obligated to pay as damages. (Doc. 54 at 11). Plaintiff responds with the contention that: "Contrary to Hiscox allegation, Plaintiff did not seek recovery for Plaintiff. Plaintiff is an LLC manager, with a Tax ID. Recovery is sought for Bhattacharya with SSN, who paid for Plaintiff losses and now seeks (i.e., legally obligated to pay back) recovery from Plaintiff." (Doc. 67 at 4). As Defendant observes (Doc. 69 at 5), Plaintiff provides no legal authority for his argument that becoming an LLC manager transforms a natural person into two separate legal persons capable of suing each other. Indeed, "courts have long understood that one cannot sue oneself." Randy Beck, Gonzales, Casey, and the Viability Rule, 103 Nw. U. L. Rev. 249, 274 (2009). The Court finds that Plaintiff has failed to demonstrate a genuine issue of material fact that Count I concerns a claim covered under the "Coverage A- Bodily Injury and Property Damage Liability" section of the Policy.

Plaintiff alternatively contends that the claim in Count I is covered under the Policy's "Supplemental Business Personal Property Floater Coverage." (Doc. 1-3 at 28). That section of the Policy provides:

> If you have first paid the deductible stated in the Schedule,

[3] The Policy further provides: "This insurance applies to 'bodily injury' and 'property damage' only if: (1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory.'" (Doc. 55-1 at 10). The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* at 23).

> we will pay the following amounts up to the Limit of Insurance stated in the Schedule. Loss or damage to "contents" and "computer equipment" away from the premises shall be subject to a sublimit of $ 2,500.00, which shall be part of, and not in addition to the Limit of Insurance shown in the Schedule.
>
> . . . .
>
> 2. "Computer equipment" means the following equipment used primarily in your business:
>
> a. hardware capable of accepting information, processing it according to a plan, and producing the desired results (including without limitation desktop and laptop computers, electronic tablets and mobile phones), as well as related peripheral equipment, including without limitation printers, video display monitors, modems, surge protectors, keyboards, routers and servers;
>
> b. air conditioning and fire protection equipment used exclusively in computer operations; and
>
> c. telephone systems and their component parts that you own.
>
> 3. "Contents" means all business personal property used primarily in your business.

(Doc. 55-1 at 46-47). The Court finds that Plaintiff has failed to demonstrate a genuine issue of material fact that Count I concerns a claim pertaining to loss or damage to "computer equipment" or "contents." Defendants correctly assert that the claim in Count I is not covered under the "Supplemental Business Personal Property Floater Coverage" section of the Policy. (Doc. 54 at 12).

Plaintiff has not shown that there is a genuine, triable issue of fact as to whether the claim in Count I is covered under the Policy. The Court will grant Defendant's Motion for Summary Judgment (Doc. 54) as to Count I.

**B. Count II: Breach of Contract**

In Count II, Plaintiff alleges that the Policy covers the loss of computer equipment purportedly stolen from NSR's office in mid-2017. (Doc. 1-3 at 29). Plaintiff contends that this loss is covered by the Policy's "Supplemental Business Personal Property Floater Coverage" provision. (*Id.* at 30).

Defendant asserts that Plaintiff failed to timely report the above loss and did not present the claim to Defendant prior to filing this lawsuit. (Doc. 54 at 13). The Policy provides: "You must see to it that we are notified as soon as practicable of an 'occurrence' or an offense which may result in a claim." (Doc. 55-1 at 19). The Policy further provides that no person or organization has a right "[t]o sue us on this Coverage Part unless all of its terms have been fully complied with." (*Id.* at 20).

To reiterate, a plaintiff who seeks to recover under an insurance contract must prove (i) the existence of an insurance policy, (ii) the happening of an insured event, and (iii) the giving of notice as provided in the policy. *See Kohlhase*, 455 P.2d at 279. Plaintiff has not raised a genuine issue of material fact as to whether he properly notified Defendant of the claim at issue in Count II before filing suit. *See Ribitzki v. Am. Family Mut. Ins. Co.*, No. 1 CA-CV 15-0509, 2016 WL 7404663, at *2 (Ariz. Ct. App. Dec. 22, 2016) ("Ribitzki cannot fail to comply with policy conditions, then complain that American Family breached its contractual duty of good faith and fair dealing and acted in bad faith when American Family could not adequately assess its liability in the absence of Ribitzki's cooperation.").

Moreover, the Policy lists "13418 N Cliff Top Drive Fountain Hills, AZ 85268" as the covered premises. (Doc. 55-1 at 7). It is undisputed that the loss alleged in Count II occurred in India. (Doc. 55 at 12, ¶49; Doc. 67 at 50). The Policy's "Supplemental Business Personal Property Floater Coverage" provides a $2,500.00 limit for loss or damage to "contents" and "computer equipment" away from the covered premises. (Doc. 55-1 at 46). In its Motion for Summary Judgment, Defendant explains that "[d]espite the breach of the Policy's conditions and the absence of any evidence to bolster [the claim in Count II], HISCOX has offered to pay this claim under the Policy's Supplemental Property Coverage." (Doc. 54 at 13; Doc. 55-8 at 2). Defendant's Reply states that it has "sent Plaintiff a check in the amount of $2,500.00—the policy limit for damage away from his premises." (Doc. 69 at 6). Plaintiff has not shown that there is a genuine, triable issue of fact as to whether the claim in Count I is covered under the Policy beyond the

$2,500.00 that Defendant has now paid to Plaintiff.

For the above reasons, the Court will grant summary judgment on Count II in favor of Defendant.

**C. Count III: Breach of Contract**

Count III alleges that "NSR LLC customers paid into the Credit Card processor's account, who in turn stole money before depositing into Merchant Accounts of NSR LLC." (Doc. 1-3 at 31). Plaintiff states that this alleged theft occurred in the following three categories: (i) "Cash stolen as discrepancy between what the credit card processor reported to IRS versus what was actually paid to Plaintiff's bank"; (ii) "Cash stolen by hiding Plaintiff's sales, accidentally disclosed on a later date" by Plaintiff's credit card processor; and (iii) "Cash stolen due to the discrepancy between industry standard dispute resolution and the 100%-dispute-resolved against Plaintiff accounting adopted by the credit card processors." (*Id.* at 31-32).

Defendant asserts that Plaintiff failed to provide notice of the above claim prior to filing this action. (Doc. 54 at 13). Plaintiff counters that "[t]his is error. Plaintiff's *Motion in Limine*, docket no: 47, provided evidence of **Notice + Public Record** submitted in 2018." (Doc. 67 at 10) (emphasis in original). In his Motion in Limine, Plaintiff argued that Defendant's assertion that it did not receive notice of the claim in Count III is "demonstrably erred" in light of his May 2018 insurance claim that requested defense in a lawsuit filed by NSR's credit card processor Elavon, Inc. ("Elavon"). (Doc. 47 at 10-12). In his May 9, 2018 email to Defendant, Plaintiff states "Please see attached the Complaint of a civil case filed, against Hiscox Insured party. Please review and provide any and all remedy, including but not limited to the duty to defend." (Doc. 55-4 at 15). As discussed in the following section, Defendant denied Plaintiff's claim for defense in the lawsuit. (Doc. 55-4 at 24-25). Nonetheless, Plaintiff appears to contend that Defendant had notice of his claim in Count III because the "merchant bank account theft was presented as an affirmative defense" in the Elavon lawsuit. (Doc. 47 at 10). That contention is without merit.

Plaintiff has produced no evidence from which a reasonable jury could conclude that Plaintiff properly notified Defendant of the claim at issue in Count III prior to filing this action. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"). Further, for the reasons discussed in Defendant's briefing (Doc. 54 at 13-14; Doc. 69 at 7-8), the Court finds that Plaintiff has not shown that there is a genuine, triable issue of fact as to whether the claim in Count III is covered under the Policy. The Court will grant summary judgment on Count III in favor of Defendant.

**D. Count IV: Breach of Contract**

Count IV alleges that Defendant failed to perform its contractual duty to defend Plaintiff in a lawsuit filed by Elavon, which was NSR's credit card processor. (Doc. 1-3 at 34). Plaintiff alleges that "NSR LLC customers paid into the Merchant Accounts of NSR LLC" and that "Credit Card processor companies denied chargeback all 100% against Plaintiff." (*Id.* at 35). After finding issue with the "100% denial against Plaintiff," "NSR LLC closed Merchant Account and walked away with proceeds." (*Id.*). In April 2018, Elavon sued Plaintiff and NSR in the McDowell Mountain Justice Court. In June 2018, Defendant denied Plaintiff's request for coverage. (Doc. 55-4 at 24-25).

Under Arizona law, an insurer has a duty to "defend the insured against any claim 'potentially covered by the policy.'" *Pueblo Santa Fe Townhomes Owners' Ass'n v. Transcon. Ins. Co.*, 178 P.3d 485, 491 (Ariz. Ct. App. 2008) (citation omitted). The "insurance policy language controls the scope and extent of an insurer's duty to defend." *Cal. Cas. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 913 P.2d 505, 508 (Ariz. Ct. App. 1996). A "duty to defend arises at the earliest stages of litigation and generally exists regardless of whether the insured is ultimately found liable." *Regal Homes, Inc. v. CNA Ins.*, 171 P.3d 610, 615 (Ariz. Ct. App. 2007).

In its lawsuit, Elavon alleged that NSR breached its contract with Elavon and owed Elavon $6,200.35. Elavon also raised a breach of personal-guarantee claim against

Plaintiff and an unjust-enrichment claim against both NSR and Plaintiff. (Doc. 55-4 at 10-13). Defendant correctly asserts that these "are uncovered economic-loss claims. Elavon, Inc.'s damages were not caused by an 'occurrence,' a term of art that this defined in the Policy as 'an accident.' . . . Moreover, Elavon's damages did not occur because of any 'property damage,' 'bodily injury,' or 'personal and advertising injury.'" (Doc. 54 at 12). The Court finds that Plaintiff has failed to demonstrate a genuine issue of material fact that the Elavon lawsuit concerned a claim potentially covered by the Policy. The Court will grant summary judgment in favor of Defendant on Count IV.

**E. Counts V and VI: Bad Faith**

Counts V and VI present bad faith claims. (Doc. 1-3 at 37-41). "In Arizona, an insurance company commits bad faith when it (1) intentionally (2) denies, fails to process, or fails to pay a claim (3) without a reasonable basis for such action." *Ness v. W. Sec. Life Ins. Co.*, 851 P.2d 122, 125 (Ariz. Ct. App. 1992). As Defendant had a reasonable basis for denying the insurance claims submitted by Plaintiff, the Court finds that Defendant is entitled to summary judgment on Plaintiff's bad faith claims alleged in Counts V and VI.

**F. Count VII: Punitive Damages**

Count VII of the Amended Complaint seeks punitive damages. (Doc. 1-3 at 43-51). Because summary judgment is being entered in favor of Defendant on all of Plaintiff's other claims, Plaintiff can show no actual damages on which punitive damages can stand. *See Wyatt v. Wehmueller*, 806 P.2d 870, 874 (Ariz. 1991) ("A plaintiff must be entitled to actual damages before being entitled to punitive damages."). Defendant is entitled to summary judgment on Count VII.

**G. Count VIII: Personal Injury**

In Count VIII, Plaintiff seeks "[p]ersonal injury compensation" of not less than $200,000 for alleged (i) "economic loss directly related to the breach of contract and Insurer's wrongful denial" and (ii) "emotional distress, loss of morale, pain, insult, undesired confrontation and other consequential damagers due to the loss of business,

loss of personal relationships with suppliers, colleagues and collaborators." (Doc. 1-3 at 51-52).

The tort of intentional infliction of emotional distress requires three elements: (i) the conduct by the defendant must be "extreme" and "outrageous"; (ii) the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct; and (iii) severe emotional distress must indeed occur as a result of the defendant's conduct. *Citizen Publ'g Co. v. Miller*, 115 P.3d 107, 110 (Ariz. 2005). Because the Court has concluded that Defendant did not act in bad faith as a matter of law, no reasonable factfinder could conclude that Defendant's conduct was extreme and outrageous. Defendant's Motion for Summary Judgment on Count VIII will be granted.

**H. Count IX: Business Tort**

In Count IX, Plaintiff seeks "business tort compensation" of not less than $300,000 for alleged "Breach of Fiduciary Duty, Tortious Interference and Breach of Contract." (*Id.* at 52-53). Defendant correctly recounts (Doc. 54 at 16) that insurers are not fiduciaries for their insureds. *See Rawlings v. Apodaca*, 726 P.2d 565, 571 (1986) (explaining that "although the insured is entitled to expect that the insurer will be 'on his side' at least to the extent of treating him honestly and fairly, we do not go so far as to hold that the insurer is a fiduciary"). To prove the tort of intentional interference with contractual relations, a plaintiff must show:

> the existence of a valid contractual relationship or business expectancy; the interferer's knowledge of the relationship or expectancy; intentional interference inducing or causing a breach or termination of the relationship or expectancy; and resultant damage to the party whose relationship or expectancy has been disrupted. . . . In addition, the interference must be improper as to motive or means before liability will attach.

*Wallace v. Casa Grande Union High Sch. Dist. No. 82 Bd. of Governors*, 909 P.2d 486, 494 (Ariz. Ct. App. 1995) (citations omitted). Plaintiff has not presented evidence from which a reasonable jury could find that Plaintiff has satisfied the elements of the tort of

intentional interference with contractual relations. Summary judgment on Count IX will be entered in favor of Defendant.

## III. CONCLUSION

Based on the foregoing,

**IT IS ORDERED** granting Defendant's Motion for Summary Judgment (Doc. 54).

**IT IS FURTHER ORDERED** denying Plaintiff's Motion for Partial Summary Judgment (Doc. 53).

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment according to this Order and terminate this action.

Dated this 29th day of October, 2020.

Honorable Eileen S. Willett
United States Magistrate Judge